EXHIBIT 2

# Combination Loan and Security Agreement

**WELLS FARGO**

Wells Fargo Equipment Finance, Inc. | 733 Marquette Avenue, Suite 700 | MAC N9306-070 | Minneapolis, MN 55402

Contract Number 240620-703 dated as of March 12, 2015

Name and Address of Debtor:
**Baker Ready Mix, LLC**
**2800 Frenchmen Street**
**New Orleans, LA 70122**

> Notice: Secured Party reserves the right to withdraw the terms of this Agreement and issue a modified Agreement without notice to Debtor if Secured Party is not in receipt of a fully executed original or facsimile of this document within five (5) business days of the date of this Agreement. However, in that event, no such modifications will be binding on Debtor unless and until Debtor executes the modified document containing all such modifications.

This Agreement dated as of **March 12, 2015** by the debtor named above (the "Debtor") in favor of Wells Fargo Equipment Finance, Inc. ("Secured Party").

1. **LOAN.** For value received, Debtor hereby promises to pay to the order of Secured Party at such address as may be designated from time to time by Secured Party, in lawful money of the United States of America the sum of **$136,981.25** in installments according to the schedule set forth below; provided, however, that Debtor and Secured Party may agree to any other payment schedule, in which case any variations shall be set forth in the space provided for additional provisions. The first payment period shall begin on the date the loan proceeds are disbursed hereunder. The first installment shall be payable on the first payment due date set forth below (which may be the same as the date the first payment period begins). Subsequent installments shall be payable on the first day of each payment period beginning after the first payment period. Debtor agrees that the date the first payment period begins and the first payment due date may be left blank when this Agreement is executed and hereby authorizes Secured Party to insert such dates based upon the date the loan proceeds are disbursed. If any installment is not paid within ten (10) days of when due, Secured Party may impose a late charge of up to 5% of the amount of the installment but in any event not more than permitted by applicable law.

**Payment Schedule:**

| | |
|---|---|
| Date first payment period begins: 03/19/2015 | First payment due: 04/19/2015 |
| Number of Installments: See Additional Provisions | Amount of each Installment: See Additional Provisions |
| Payment Period: See Additional Provisions | Annual Interest rate used in computing payment schedule: 0% |
| Principal amount of loan proceeds disbursed: $136,981.25 | |

**Additional Provisions:** Principal and interest shall be payable in twenty-nine (29) monthly installments of $4,566.04, followed by one (1) monthly installment of $4,566.09 for the month of March 2018 beginning on the first payment due date and continuing on the same day of each month thereafter until fully paid. Installments shall be applied first to interest and then to principal. However installments for the months of January and February of each year shall each be in the amount of $0.00.

This Loan may be prepaid in whole at any time by paying to Secured Party the unpaid principal balance of this Loan, together with accrued but unpaid interest and late charges, plus a prepayment premium of the greater of the following: (a) $350 or (b) 5% of the principal amount prepaid if prepaid during months 1 - 12, 4% during months 13 - 24 and 3% thereafter.

This Loan shall not be prepaid in part except as a result of a permitted disposition of an item of collateral which secures this Loan. The amount of such partial prepayment relative to an item of collateral shall be equal to a principal amount, as reasonably determined in Secured Party's sole discretion, together with accrued but unpaid interest, plus a prepayment premium calculated in accordance with the preceding paragraph with respect to the principal amount prepaid. Nothing contained in this paragraph shall be construed as an authorization by Secured Party to Debtor to sell or otherwise dispose of an item of collateral which secures this Loan. Such sale or disposition of an item of collateral by Debtor shall be made solely in accordance with the terms of this Agreement or other agreement pursuant to which Debtor pledged such item of collateral to Secured Party. Debtor may remit to Secured Party amounts in excess of an installment that is due hereunder and Secured Party shall apply such amount to the next maturing installment or installments. Payment of amounts in excess of the installment that is due or installments prior to the due date thereof shall not be treated as a prepayment or result in a change to either the total number of installments or the total sum of all installments payable under this Loan.

**THIS AGREEMENT INCLUDES THE TERMS ON THE ATTACHED PAGE(S).**

IN WITNESS WHEREOF the Debtor has signed this Agreement as of the date first above written.

| Secured Party: Wells Fargo Equipment Finance, Inc. | Debtor: Baker Ready Mix, LLC |
|---|---|
| By _/s/ Pam Hunter_ | By _/s/ Arnold Baker_ |
| Pam Hunter | Arnold Baker, Manager |
| Sr. Contract Admin. | Title |
| Title | |

A-COMBLN.0215:SLDAVIES:03122015.1403:439295:209047

The Debtor's obligation to re-pay the principal amount of this Loan together with interest and all other amounts payable by Debtor as set forth herein is absolute, unconditional and irrevocable, and all such amounts shall be paid by Debtor in accordance with the terms hereof without any abatement, reduction, setoff or defense of any kind.

2. **DEFINITIONS.** The following terms have the following meanings in this Agreement:

"Equipment" means the following described equipment of the Debtor, together with all accessories, attachments, parts, repairs, additions and replacements attached thereto or incorporated therein: **One (1) Hyundai Model HL757-9A Wheel Loader, S/N: HLM04KF0000220**

After Debtor signs this Agreement, Debtor authorizes Secured Party to insert any missing information or change any inaccurate information (such as the model year of the Equipment or its serial number or VIN) into this Equipment Description.

**Equipment Location: 2800 Frenchmen Street, New Orleans, LA 70122**

"Guarantor" means any guarantor of the Loan.

"Loan" means the loan evidenced by paragraph 1 of this Agreement.

"Obligations" means (a) the Loan and all other obligations of Debtor to Secured Party under this Agreement and (b) each and every other obligation Debtor may now or at any time in the future owe to Secured Party.

3. **SECURITY INTEREST.** To secure payment of the Obligations, Debtor hereby grants Secured Party a security interest in the Equipment and in the proceeds thereof.

4. **REPRESENTATIONS AND AGREEMENTS.** Debtor hereby represents and agrees as follows:

(a) **Authorization.** (i) If Debtor is a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this Agreement and the performance of Debtor's obligations hereunder have been duly authorized by all necessary action on the part of the Debtor; (ii) the person signing on behalf of Debtor is duly authorized; (iii) all information provided by Debtor to Secured Party in connection with this Agreement is true and correct; and (iv) this Agreement constitutes a legal, valid and binding obligation of Debtor, enforceable against Debtor in accordance with its terms.

(b) **Business Location; Name.** Debtor shall not change its name or business address from that set forth above, and, if an individual, shall not change the state of residence, and, if not an individual, shall not change the state of organization, unless it shall have given Secured Party or its assigns no less than thirty (30) days' prior written notice thereof.

(c) **Business Purpose; Lawful Use.** The Equipment will be used primarily for business purposes as opposed to personal, family or household purposes. Debtor will comply with all laws and regulations applicable to the Equipment and its use.

(d) **Clear Title; Authorization to Pay Loan Proceeds.** Upon disbursement of the proceeds of the Loan, Debtor will have good and marketable title to the Equipment free and clear of all security interests, liens, and other encumbrances and rights, and of all claims of co-ownership by others. Debtor authorizes Secured Party to disburse the Loan proceeds directly to the seller of the Equipment to Debtor to the extent of the unpaid purchase price. Secured Party may receive credits, rebates, discounts or other monetary incentives (any, an "Incentive") from the seller and/or manufacturer of the Equipment as an inducement to enter into this Agreement. Debtor acknowledges that any such incentive shall be solely for the benefit of Secured Party and that Debtor has no right or interest in or to any incentive granted to Secured Party.

(e) **No Sales or Junior Liens.** Debtor will not sell, transfer, lease, grant a security interest in, or otherwise encumber the Equipment except for the security interest granted hereunder.

(f) **Equipment Delivery.** Debtor hereby represents that the Equipment has been delivered to and accepted by the Debtor and is in all respects satisfactory to Debtor (a) on the date of this Agreement or (b) on the date shown on a separately signed Delivery and Acceptance Certificate.

(g) **Equipment Location.** Debtor will not part with possession or control of or suffer or allow to pass out of its possession or control any Equipment or change the location of the Equipment or any part thereof from the Equipment Location shown above unless the Equipment is rolling stock.

(h) **Maintenance.** Debtor will maintain the Equipment in good repair, condition, and working order and will furnish all parts and services required therefor, all at its expense, ordinary wear and tear excepted.

(i) **Taxes.** Debtor will pay all personal property, sales, use, and other taxes levied on or assessed against the Equipment before the date on which penalties attach thereto.

(j) **Equipment Personalty.** The Equipment shall remain personal property regardless of its attachment to realty, and Debtor agrees to take such action at its expense as may be necessary to prevent any third party from acquiring any interest in the Equipment as a result of its attachment to realty.

(k) **Equipment Use.** Debtor will use the Equipment with due care and only for purposes of which it is intended. The Equipment shall not be used outside of the United States without Secured Party's prior written consent.

(l) **Casualty Insurance; Loss or Damage.** Debtor will obtain and maintain all-risk physical damage insurance issued by responsible insurance companies insuring the Equipment against damage and loss in an amount not less than the full replacement cost of the Equipment. Debtor shall furnish Secured Party with a certificate of insurance evidencing the issuance of a policy to Debtor in at least the minimum amounts required herein naming Secured Party as (i) loss payee for the property damage coverage if the aggregate original cost of the Collateral is $1 million or less, or (ii) lender loss payee for the property damage coverage if the aggregate original cost of the Collateral exceeds $1 million. Each such policy shall be in such form and with such insurers as may be satisfactory to Secured Party and each such policy shall contain a clause specifying that no action or misrepresentation by Debtor shall invalidate such policy, and a clause requiring the insurer to give Secured Party at least 10 days prior written notice of (i) the cancellation of such policy or (ii) any amendment to the terms of such policy if such amendment would cause the policy no longer to conform to the policy requirements stated in this paragraph. Debtor shall advise Secured Party in writing promptly of any loss or damage to the Equipment ("Event of Loss") and of the circumstances and extent of such Event of Loss. Debtor shall, at Secured Party's option, either (a) replace such Equipment with collateral acceptable to Secured Party within 30 days after the Event of Loss and such replacement collateral shall automatically become Equipment subject to Secured Party's security interest under this Agreement or (b) pay down the Obligations by an amount representing the unpaid portion of the Obligations funded in

reliance of the affected Equipment as reasonably determined by Secured Party. Any insurance or condemnation proceeds received shall be paid to Secured Party and credited to Debtor's Obligations. Notwithstanding anything herein to the contrary, Debtor shall not be required to pay to Secured Party a prepayment premium on a prepayment hereunder that is due to a casualty to the Equipment provided Debtor provides Secured Party with proof of an insurance claim therefor. Whenever the Equipment is damaged and such damage can be repaired, Debtor shall, at its expense, promptly effect such repairs as Secured Party shall deem necessary for compliance with clause (h) above. Proceeds of insurance shall be paid to Secured Party with respect to such reparable damage to the Equipment and shall, at the election of Secured Party, be applied either to the repair of the Equipment by payment by Secured Party directly to the party completing the repairs, or to the reimbursement of Debtor for the cost of such repairs; provided, however, that Secured Party shall have no obligation to make such payment or any part thereof until receipt of such evidence as Secured Party shall deem satisfactory that such repairs have been completed and further provided that Secured Party may apply such proceeds to the payment of any installment or other sum due or to become due under this Agreement if at the time such proceeds are received by Secured Party there shall have occurred and be continuing any Event of Default or any event which with lapse of time or notice, or both, would become an Event of Default.

(m) **Inspection Rights.** Debtor will permit Secured Party to inspect the Equipment at any time and from time to time as Secured Party may reasonably request.

(n) **Further Assurances.** Debtor will promptly execute and deliver to Secured Party such further documents, take such further action, and provide such information as Secured Party may request in order to carry out more effectively the intent and purpose of this Agreement, and/or comply with laws or regulations applicable to Debtor, Secured Party, and/or the transaction evidenced by this agreement, including information identifying the owners of Debtor and its affiliates and their respective ownership interests and the execution and delivery of appropriate financing statements to protect fully Secured Party's interest hereunder in accordance with the Uniform Commercial Code or other applicable law. Secured Party and any assignee of Secured Party is authorized to file one or more Uniform Commercial Code financing statements without the signature of Debtor or signed by Secured Party or any assignee of Secured Party as attorney-in-fact for Debtor. Debtor hereby grants to Secured Party a power of attorney in Debtor's name, to apply for a certificate of title for any item of Equipment that is required to be titled under the laws of any jurisdiction where the Equipment is or may be used and/or to transfer title thereto upon the exercise by Secured Party of its remedies upon an Event of Default by Debtor under this Agreement. Debtor will pay all costs of filing any financing, continuation or termination statements with respect to this Agreement including, without limitation, any documentary stamp taxes relating thereto. Debtor will do whatever may be necessary to have a statement of interest of Secured Party and any assignee of Secured Party in the Equipment noted on any certificate of title relating to the Equipment and will deliver said certificate to Secured Party. If Debtor fails to perform or comply with any of its agreements, Secured Party may perform or comply with such agreements in its own name or in Debtor's name as attorney-in-fact and the amount of any payments and expenses of Secured Party incurred in connection with such performance or compliance, together with interest thereon at the rate provided above, shall be deemed payable by Debtor upon demand.

(o) **Financial Statements.** Debtor will (i) within forty-five (45) days after the end of each fiscal quarter other than the final fiscal quarter of each fiscal year, deliver to Secured Party a balance sheet and statement of income as at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year; (ii) within one hundred and twenty (120) days after the end of each fiscal year, deliver to Secured Party a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Debtor's chief financial officer as fairly presenting the financial position and results of operations of Debtor, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Secured Party; and (iii) with reasonable promptness, furnish Secured Party with such other information, financial or otherwise, relating to Debtor or the Equipment as Secured Party shall reasonably request.

5. **EVENTS OF DEFAULT.** The occurrence of any one of the following events will constitute an "Event of Default" hereunder: (a) default in the payment, within ten (10) days of when due, of any payment of principal or interest on the Loan, or default in the payment within ten (10) days of when due, of any of the other Obligations; (b) the breach of any one or more of the representations of Debtor or of any Guarantor under any guaranty, or failure of Debtor or of any Guarantor to observe or perform any one or more of the agreements to be observed or performed by Debtor hereunder or by such Guarantor under any guaranty, and, in each case, the continuance thereof for ten (10) days following written notice thereof from Secured Party to Debtor or such Guarantor, as applicable; (c) the filing of a petition by or against Debtor or any Guarantor under the federal Bankruptcy Code naming Debtor or such Guarantor as debtor; (d) appointment of a receiver of any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any state bankruptcy or insolvency law by or against, Debtor or any Guarantor; (e) any financial or credit information submitted by or on behalf of Debtor or any Guarantor shall prove to have been false or misleading when submitted; (f) an event of default shall occur under any indebtedness Debtor or any Guarantor may now or hereafter owe to any affiliate of Secured Party (g) any individual Debtor or individual Guarantor shall die; (h) Debtor's or any Guarantor's consolidation with, merger into, or sale of all or substantially all of its assets to, any other person or entity; (i) the sale or transfer of any shares of its capital stock or of any ownership interest in Debtor or any Guarantor to any person, persons, entity or entities (whether in one single transaction or in multiple transactions) which results in a transfer of a majority interest in the ownership and/or the control of Debtor or any Guarantor from the person, persons, entity or entities who hold ownership or control of Debtor or any Guarantor, as the case may be, as of the date of this Agreement, or (j) Debtor or any Guarantor changes its corporate/organizational form or the jurisdiction in which it is organized.

6. **REMEDIES.** Upon the occurrence of an Event of Default, and at any time thereafter, Secured Party may exercise, in its discretion, any one or more of the following rights and remedies: (a) Secured Party may declare the Loan and each other Obligation to be immediately due and payable, and thereupon the full principal balance plus the prepayment premium described above, together with accrued but unpaid interest through and including the date of payment in full, shall be and become immediately due and payable in full without presentment, notice of dishonor, or protest, all of which Debtor hereby waives. Interest shall be calculated from the date of such Event of Default, both before and after judgment, at a rate equal to the lesser of 12% per annum or the highest rate permitted by law; (b) Secured Party may exercise any and all of the rights and remedies available to a secured party under the Uniform Commercial Code as in effect in the State of Minnesota, and in connection therewith, Debtor agrees at its expense to assemble the Equipment and make it available to Secured Party at a place or places to be designated by Secured Party in the continental United States reasonably convenient to both Secured Party and Debtor, and agrees that any notice of intended disposition of the Equipment required by law shall be deemed reasonable if such notice is given to Debtor in the manner provided in this Agreement at least 10 days before the date of

such disposition; (c) Secured Party may recover from Debtor, and Debtor agrees to pay, the legal fees and expenses incurred by Secured Party in the exercise of any right or remedy available to it under this Agreement, including expenses of repossession, repair, storage, transportation, and disposition of the Equipment; and (d) Secured Party may exercise any and all other rights and remedies available to it by law or other agreement.

7. **MISCELLANEOUS.**

(a) Secured Party shall not be deemed to have waived any of its rights hereunder unless such waiver be in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other right. A waiver on any one occasion hereunder shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

(b) All rights and remedies of Secured Party shall be cumulative and may be exercised singularly or concurrently, at Secured Party's option, and the exercise or enforcement of any one such right or remedy shall not bar or be a condition to the exercise or enforcement of any other.

(c) Any written notice hereunder to Debtor or Secured Party shall be deemed to have been given when delivered personally or deposited with a recognized overnight courier service or in the United States mail, postage prepaid, addressed to recipient at its address set forth above or at such other address as may be last known to sender.

(d) Debtor shall keep accurate and complete records pertaining to Debtor's business and financial condition and submit to Secured Party such periodic reports concerning Debtor's business and financial condition as Secured Party may from time to time reasonably request.

(e) This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Minnesota without regard to conflicts of law rules.

(f) This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Debtor and Secured Party.

(g) If this Agreement is signed by more than one person as Debtor, then the term "Debtor" shall refer to each of them separately and to all of them jointly, and each such person shall be liable hereunder individually in full and jointly with the others.

(h) Notwithstanding anything to the contrary contained herein, if the rate of interest, late payment fee, prepayment premium or any other charges or fees due hereunder are determined by a court of competent jurisdiction to be usurious, then said interest rate, fees and/or charges shall be reduced to the maximum amount permissible under applicable law and any such excess amounts shall be applied towards the reduction of the principal balance of this Loan.

(i) Debtor may not assign or in any way dispose of all or any part of its rights or obligations under this Agreement or enter into any sublease of all or any part of the Equipment. Secured Party may assign its interest in this Agreement without notice to or the consent of the Debtor. Thereafter, such assignee shall have all the rights and benefits of Secured Party hereunder, but none of the obligations. Debtor will make all payments directly to such assignee. Debtor agrees to settle all claims, defenses, setoffs and counterclaims Debtor may have against Secured Party with Secured Party and will not set up any such claim, defense, setoff or counterclaim against assignee, and Secured Party agrees to remain responsible therefore.

(j) Debtor shall not allow any Blocked Person or Blocked Persons to have an ownership interest in or control of Debtor. "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Secured Party, to be a person with whom Secured Party is not permitted to extend credit to or with regard to whom, a debtor-creditor relationship may result in penalties against Secured Party or limitations on a secured party's ability to enforce a transaction.

(k) This Agreement represents the entire agreement between the parties with respect to the Loan and the security interest in the Equipment contemplated hereby and may be modified only by a written instrument signed by Secured Party and Debtor.

(l) Any provision in this Agreement that is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability, without invalidating the remaining provisions of the Agreement, and any such unenforceability in any jurisdiction shall not render unenforceable such provision in any other jurisdiction.

(m) Paragraph headings are for convenience only, are not part of this Agreement and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

(n) Debtor hereby authorizes Secured Party to provide to the seller or manufacturer of the Equipment a copy of this Agreement, any other related document, and details pertaining to Debtor's account with Secured Party.

(o) There shall be one original of the Agreement and it shall be marked "Original". To the extent that this Agreement constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may be created only in the Agreement marked "Original." Secured Party may in its sole discretion, accept a photocopy, electronically transmitted facsimile or other reproduction of this Agreement (a "Counterpart") as the binding and effective record of this Agreement whether or not an ink signed copy hereof is also received by Secured Party from Debtor, provided, however, that if Secured Party accepts a Counterpart as the binding and effective record hereof, the Counterpart acknowledged in writing above by Secured Party shall constitute the record hereof. Debtor represents to Secured Party that the signature that appears on the Counterpart that is transmitted by Debtor to Secured Party in any manner described above is intended by Debtor to authenticate the Counterpart notwithstanding that such signature is electronic, facsimile or a reproduction and Debtor further agrees that such Counterpart received by Secured Party, shall, when acknowledged in writing by Secured Party, constitute an original document for the purposes of establishing the provisions thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against Debtor. If Secured Party accepts a Counterpart as the binding and effective record hereof only such Counterpart acknowledged in writing above by Secured Party shall be marked "Original" and to the extent that this Agreement constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that bears Secured Party's ink signed acknowledgement and is marked "Original."

DEBTOR HEREBY WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY MATTER ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT.

EXHIBIT 2

**Verification of Information**

**Federal Tax ID #/Social Security #**    Number on File    *ver. from app* *is repp.*

**Email Address:** abaker@bakerreadymix.com    **Documentation Contact Name:** Arnold Baker

**Principal Place of Business Address:** 2800 Frenchmen Street, New Orleans, LA 70122

☑ The address stated above is correct.    ☐ Change the address as stated below.

Street _____ City _____

State _____ Zip Code _____

**Billing Address:** Baker Ready Mix, LLC, 2800 Frenchmen Street, New Orleans, LA 70122

☑ The billing address stated above is correct    OR    ☐ Change the billing address as stated below:

Street _____ City _____

State _____ Zip Code _____

**Equipment Location:** 2800 Frenchmen Street, New Orleans, LA 70122

☐ The equipment will be located at the Equipment Location stated above or at the address shown on the attached Schedule A.
Indicate **County** the equipment is located in *Orleans* ; or

☐ The equipment will be located at:
Street *1118 Engineers Rd*    City *Belle Chasse*
State *LA*    County *Plaquemines*    Zip Code *70037*
(Equipment in multiple locations: attach a list by VIN and include the complete address and County of each piece of equipment.)

**Personal Property Tax:** If the equipment is located in a state or locality that requires reporting of the equipment on a personal property tax return, please include the equipment with other property you own.

**Notice: To help the government fight the funding of terrorism and the money laundering activities, U.S. Federal law requires financial institutions to obtain, verify and record information that identifies each person (individuals or businesses) who opens an account. What this means for you: When you open an account or add any additional service, we will ask you for your name, address and taxpayer identification number that will allow us to identify you. We may also ask to see other identifying documents.**